Good morning, your honors. Ken Miller on behalf of Mr. Sanchez, and may it please the court. Ideally, I would like to address three points. The first being I believe that the district court made an error of law in going beyond what the court was instructed to do by the court of appeal and not making a credibility determination, but instead focusing on whether or not Elias Fiora was even a key witness in this case. I believe that's an error of law that supports an abuse of discretion. Second, in what the district court tried to do in discounting Elias Fiora's testimony and instead saying there was sufficient evidence on predisposition, I do not believe that that was supported by law, nor did the district court pull it off. There is evidence of predisposition in the record. No two ways about it. But the question is, this newly discovered evidence, what I understand the district court to have done is the district court said none of that newly discovered evidence would have any effect on a jury's determination of predisposition. Yes, your honor. And the district court, even, I'm going to assume it's true. I'm going to assume it's true, but it still wouldn't have had any effect on that. Tell me how, if it is true, it would have an effect on the determination of predisposition. Your honor, if it's true, that means at the very first meeting between the informant and the defendant, the informant sold the defendant drugs. If it is true, that means at the very first meeting, the defendant did not offer to sell the informant drugs. Okay. So then you're saying that that would be going to the pot of when you're assessing that he has that compartment in his car and he has two prior convictions, he also would have to consider, you know, I mean, it's like, yeah, if he was predisposed at some point, maybe he's not anymore. So that would be evidence taken away from it? No, your honor. I would disagree with the characterization. First, I would say that predisposition is determined. I'm trying to help you here. Oh, thank you, your honor. I apologize profusely. Your honor, then what I'm saying is that the first meeting between the informant and the defendant is the most important meeting in the case because that's when predisposition is determined. I understand the court saying that there is evidence of predisposition, but focusing on 13- and 17-year-old convictions that are completely different, involving small- Yes, your honor. The standard is you're supposed to focus on predisposition to commit the offense for which he's being tried. Yes, your honor. And in this case, it's distribution of four, a conspiracy to distribute four pounds of methamphetamine versus 13- and 17-year-old convictions for distribution of two grams of some illicit substance. And then the other evidence of predisposition, and it is evidence of predisposition, granted, is from after three weeks to four weeks of pressure from the informant on the defendant. That is what happened on the day of the actual drug sale. Well, let's say if we said the court was wrong to just wall the two off completely and say, no, this just really would go into the whole pot. Yes, your honor. Does the court – and in that analysis, the court did say, okay, I presume this to be true. Is then what the court has to do is have a hearing and determine whether it's true? Either that or just determine that there is sufficient evidence here to undermine confidence in the verdict. Because that's the real – that's the real issue. But we don't know whether it is true or not. We need to know whether it's true. Let me ask you something about that. Then an evidentiary hearing is required. I was trying to figure out why the judge assumed truth. Yes. Instead of deciding whether it was true. Yes. And my thought was you wanted a lot of discovery that you didn't get. The judge wouldn't let you have it. Yes, your honor. Is that true? Yes. And I thought he didn't want to make the government reveal all its snitches and everything about him because of the danger to other cases and the danger to life. So assuming that it's true, assuming that these affidavits are true, avoids the need for that. Am I imagining something that doesn't make any sense or is that consistent with what the judge said? Your honor, I don't believe that's what the judge said. I believe that the government suggested even if the evidence is true, it wouldn't make a difference. And so then there was some discussion between the district court and myself about, well, what if I do that? What if I just assume this is true and take it from there? So I think that is why the district court did it. And I think the district court, frankly, was adverse to allowing discovery and adverse to an evidentiary hearing. What kind of discovery would you need? I would like to know what other types of complaints have been made against this informant. What I'm thinking is suppose we were to send this back and say, don't just assume, find out and make findings of fact. What kind of discovery would be appropriate and what concerns could there be? There could be the informant's file to the extent that there is one kept by the B&E, which would reflect all complaints against this informant that had been made while he was working for the California Bureau of Narcotics Enforcement. What do you mean complaints? Complaints by suspects who said, this person set me up. This person was sold. I'll say this person set me up. That's what snitches do. Right. I don't understand why that would matter. I apologize. That's a very good point. What I mean is this person sold me drugs in an effort to ensnare me and convince me that he was a good guy and then tried to get me to sell drugs back to him. Why wouldn't you have done that before? If it is really relevant, as you're claiming that it is relevant, why wouldn't you have made that motion before to say, you know, to support my defense I need to know more about Mr. Fierro? I believe that there were serious discovery motions made prior to trial and no such evidence was disclosed. Mr. Silva was not found until well after trial, as well as Mr. Avalos and Mr. Cano. Those people were not found until there was already a conviction and then I was appointed and I had a very good investigator go out and actually find these people and get it. They had tried to get them previously, but they were unable to locate them. Had the government provided discovery about any of this or any of these people or any of the ---- No, Your Honor. No, Your Honor. Did the trial lawyer seek it? I believe the trial lawyer did seek it, Your Honor, and the trial lawyer also sought investigative funds. Even though this was a retained case for the attorney, because the defendant didn't actually have any money, the court appointed an investigator to go out and try and find these people and they were unable to do it and none of this evidence was turned over, including police reports that I found showing Mr. Silva, Mr. Fiero in a car together suggesting they were smoking methamphetamine on the day of Mr. Sanchez's arrest. If I got this right, what you wanted to prove was the snitch isn't just buying dope from the people he sets up. He's selling it, selling dope to the people that he sets up. Yes, Your Honor. And what you found well after the trial was a couple of people said, yep, that's the deal, and that's what he tried to do in his first meeting with this defendant. Yes, Your Honor. And there was a witness to that first meeting. And what you want is to get discovery so you can find out if he did the same thing with other people. Yes, Your Honor. That's exactly right. Is there any evidence ---- I know our prior disposition was premised on the ground that the government was not aware of any perjury that may have taken place. Yes, Your Honor. Is there any evidence that the government was aware? Yes, Your Honor. Well, no, when I say the government, I do not mean the prosecutor in this case. I mean the handling agents of this, the B&E officers that were handling this agent. When they made an arrest on the night that Mr. Sanchez was ---- excuse me, the day that Mr. Sanchez was arrested, they also arrested Mr. Silva in a car with Mr. Fierro. And there was a meth pipe in the car. And Mr. Silva told my investigator that I was smoking that meth with Mr. Fierro. And the police arrest, they pull over the car, they pull out Mr. Fierro. Mr. Fierro goes with the ---- his controlling agent, Agent Thulin of the B&E, and they arrest Eric Silva. They arrest Eric Silva on outstanding warrants. They do not arrest him on having this meth pipe in the car and he never hears about the meth pipe in the car again. I believe that would be evidence that these agents knew that Elias Fierro was smoking dope with his targets. And if he was smoking, if they knew he was smoking dope with his targets, they know he's perjuring himself on the stand. So I don't believe there's any evidence that the prosecutor knew this, but I believe there's evidence that the agents who were controlling Mr. Fierro knew this. Or at least there is certainly reasonable ---- everybody is on inquiry notice when you can find a guy who is this bad and you can find this many people saying this is his modus operandi. Now, that still needs to be tested. Yes, Your Honor, it does. To know who's telling the truth here. It does. I believe that my position with the district court was you have to have an evidentiary hearing if you want to deny a new trial motion. If you want to say that there is enough evidence here, that so many people have come out of the woodwork that you find it credible, I believe the district court could have done that. And also, I did have Mr. Silva in court to testify at an evidentiary hearing, and we never ---- we were never permitted that. So I think the court can look at the fact that he was ready, willing, and able to testify. And here's another problem I have with the district court's decision when it said that it was citing the evidence of predisposition, and they ---- the district court cites recordings from the day of the transaction indicating that Sanchez enthusiastically participated, but that doesn't go to predisposition because that or, you know, showing predisposition because that was on the day. So it has to be pre-transaction. This is during the transaction. That's correct, Your Honor. You also have the additional point that the foundation for those tapes was laid by Elias Fiero. And the person who interpreted those tapes and cited in the government's case is Elias Fiero. Well, if you're going to take Elias Fiero out of the case because he's a perjurer, take him out of the case. Don't rely on him to say there's otherwise sufficient evidence of predisposition. And then she also relied on common drug lingo on the day of the transaction, and then the two old drug convictions. So those were the three things she relied on. Yes, Your Honor. Okay. Thank you. My time is up unless the Court has any further questions. Thank you. Thank you, counsel. Good morning, Your Honors. May it please the Court. Ginny Joseph on behalf of the government. Counsel, I have a couple questions for you. I look at the three things that the judge relied on. One of them is the priors, but then I look at this Supreme Court decision in Sherman, and it says a 9-year-old sales conviction and a 5-year-old possession conviction are insufficient to prove that Petitioner had a readiness to sell narcotics at the time Calchinian approached him. So that looks kind of weak because the convictions in this case are much older. And then I look at the next thing, that he used and understood drug lingo, and he said, been there, done that, and I know you know the procedures and everything, homie. I know how to do it. That struck me as really weak because, gee, everybody learns drug lingo now from watching television, and it makes people do resume puffing, applying for legal jobs all the time. I mean jobs that are not illegal. I can't see why there wouldn't be some resume puffing in the illegal market as well. And so the third thing is the day of the transaction recordings showing enthusiasm, and then I've got this standard that we laid down in the mandate in the first case, and it seems hard for me to see how you meet it. What am I missing? Well, Your Honor, you're obviously talking about the predisposition element. All I'm talking about is predisposition. All right. Well, let's go there. I think that the two prior drug trafficking convictions are some evidence of predisposition. But under Sherman, not much. They're older, that's true, but it was one piece of the puzzle. Older and much smaller quantities, not anything of this magnitude. And then the common drug lingo, I think it's kind of undisputed that the defendant was an addict. So if he was purchasing drugs, he would be around people with drug lingo. There was more than that. I think the tape recording showed a number of things. In addition to the ---- But that's on the day. So that, you take that out, because what you have to show is predisposition before the actual commission of the offense. True. But under Jacobson, you do consider later things as circumstantial evidence of predisposition. So it doesn't go out of the pot. It's just considered as part of the pot. And here, that tape not only showed the drug lingo, I actually think it's more of the weaker part, but there is drug lingo and coded language, which is not necessarily something you see on every cop show, the kind of coded language they were using. But you have the defendant ---- What kind of coded language are we talking about? Oh, referring to, well, let's do it for the nines, or the white lady referring to cocaine, some of those terms. White lady. I heard that in a movie years ago. But I think in addition to the drug lingo, that's not all there is there. I think you have the defendant. He's the one negotiating the quantity, the price, the location. You have him laughing and joking about this. And Your Honor mentioned the statement he said about I've been there, I've done that. He's trying to reassure the confidential informant. He knows how to do a drug deal. He knows how this goes. He's in a pretty bad position, I mean, predisposed or not, at that point when you're actually involved in a drug transaction of this magnitude, I mean, you better be going along with the program pretty enthusiastically or you could end up getting yourself in harm's way. Well, I think there's other cases where you don't have to be so gregarious about it. He's excited about the $4,000 he's making on this deal. I'm confused here, though. This isn't really a challenge as to insufficiency of the evidence on predisposition, is it? No. Okay. What I see as the problem is that the court completely walled off and said that this new evidence wouldn't have had any relevance to predisposition. That was certainly one of its findings. I actually ‑‑ That's where I have the problem. If this were a challenge to sufficiency of the evidence here, I am inclined to agree with you that there is sufficient evidence to show predisposition, but the question is this new evidence, if it's thrown into the pot, how would that affect the calculus of what the jury was about to do? And it's my understanding that what the district judge said is this new evidence has no relevance to predisposition. Isn't that what the district judge said? That's true, and I respectfully submit that that is true. What Silva says is that he's there for their first meeting. Okay, but if you get it to introduce all of that, and I think that that's all pretty damning and that compartment and all of that stuff, but why wouldn't it be relevant, you know, but he's also trying to say, hey, you know, I really didn't want to do this, but this guy, I owed him some money because he sold me some drugs, and so it's not really that I didn't really want to do this. I was forced to do it because I was concerned about my family. Why then wouldn't it be relevant if he was predisposed on this issue if Fiero had been dealing drugs to other people, if he had been using them with other people? I think why what Silva says doesn't go to predisposition is because it talks about the confidential form of Fiero selling drugs. It speaks nothing as to the defendant's willingness to buy, to sell drugs or the confidential form of his willingness. But it supports part of his argument why he wasn't predisposed. He said, I owed this guy some money. You know, I mean, without that evidence, the jury probably just thought, oh, yes, you know. Well, I think the defendant's own testimony at that point made it not credible. He said he owed $600. This was a $4,000 drug deal. And to get back to some of the other evidence of predisposition. Why does that make it not credible? If you owe $600 to a dope dealer, it's probably more dangerous knowing $28,000 to the Social Security Administration in terms of what he might do to you. No, but my point is he said he felt threatened by $600 drug debt. He's looking enthusiastic about making way more money, and he talks about doing other deals in the future. And in addition to that on the entrapment issue, we have the phone records. I think those are very significant. Here's what I'm not getting. You have evidence later when he's doing the deal that he's enthusiastically participating, and that is circumstantial evidence that he was enthusiastic earlier when he got into it, for sure. But as Judge Callahan says, this isn't a sufficiency of evidence question. What troubles me is I don't see why it isn't relevant that the first talk of dope dealing between Fiero and the defendant wasn't Fiero trying to sell dope to the defendant, which is the evidence that the district judge thought, and you think, doesn't matter. It seems to me that it matters to show whether the defendant had a predisposition to sell drugs. If their initial encounter was consistent with his own testimony, I'm not a seller. I'm a buyer because I'm an addict. It was only because I'd gotten hocked to this dangerous guy so much that I sold for him. I think, well, let me see. First, we do have some evidence that goes back that predates the drug deal that shows predisposition, and that's the phone records of the confidential informant. All right. Can I just back up to the, in our prior disposition, we said, here's the standard. If there's a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. There's now evidence that the government's key witness in this trial committed perjury. Why wouldn't that have affected the entirety of the case? I think for a few reasons. Number one, and the district court addressed this by just assuming that that was going to be true. Let's say everything he says is true. I think there's three reasons. One is that the Silva's testimony was going to have limited probative value. I think that's because he, his statements over time were inconsistent. They were inconsistent with the defendant's own testimony about that first meeting. And number two, I think that the court's decision to dismiss the defendant  It was a mistake in numerous ways which were enumerated by the government in its moving papers. It's obvious that Fiero is a drug dealer, a drug user, a convicted felon. If the jury bought all this, if they thought they were all a bunch of liars, the defendant, the snitch, everybody involved here, a bunch of liars, why wouldn't they then have a reasonable doubt about who did what with whom? Because of all the other evidence presented by the government. And it's not only the state reporting. That might be why you might win again, but that's not why you don't give someone a fair shot at putting their defense on. Well, I think that's what the reasonable probability standard is. Let's take out everything relating to Fiero and let's consider what all the other evidence is and what it is. So if I think that that, if I think that the evidence was relevant to predisposition, if I disagree with you on that point and I think the district court got that wrong, then should I be ordering a hearing on this to determine? No. Because the district court did the thing that I think avoids any need for an evidentiary hearing. She accepted as true all the declarations. Okay. Then if it is true and I think it's wrong that it is relevant, then I should just reverse. I shouldn't do a hearing, right? No. I'm sorry. I misunderstood. No. If I assume that it's all true and I say that's relevant evidence as to predisposition, I'm going to take the district, it's relevant evidence as to predisposition, and I'm not sure of what the result would have been had it come in, then I should just reverse the conviction. Well, I think if you found that there's a reasonable probability that it would affect the verdict, yes. But I respectfully submit there's not because of all this independent evidence. If you excise out everything relating to Fiero, you still have the tape-recorded conversation. Why don't we excise? The standard isn't excise. It's not a Frank's hearing type of standard. Instead, the standard is if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. You don't get to say let's pretend we had the trial without Fiero. That's true. Although there is some case law from the circuit that does just that. Ross, Endicott, Wilhoit, Holmes, they all reference. What we need to pretend is suppose not that you had a trial where the jury never gets to see Fiero. We suppose a trial where they get to see Fiero is the government's star witness plus proof that he's a perjurer. Well, Your Honor, first of all, I would contest that Fiero's testimony had a lot of relative value for the government given his substantial impeachment. Secondly, I think that you can't keep arguing this impeachment thing. I wasn't on the three-judge panel, but we have one of them that was here, and they said it's not just impeaching evidence. That's law of the case. No, that's true, Your Honor. Again, that's only. So you can't keep repeating that to someone that already told you it's not just impeaching evidence. That's right. My point simply was that Fiero was impeached, and secondly, that the defendant's own testimony made him very uncredible. And, you know, thirdly, Silva would very limited probative value on the subject of entrapment, because what Silva doesn't say in any way is that, oh, I saw the Fiero suggesting a drug deal to the defendant. You hear nothing about that. You have to make this huge leap, this huge inference that because Fiero mentioned a drug deal to Silva, that, of course, he must have entrapped the defendant. But there's no evidence of that. There's no evidence of that. But what is the law? I'm interested in this knowledge, because I know our men at DSPA, we assumed and found that the standard applied when the government wasn't aware. But don't you usually have the agents at counsel table? Aren't they working as your investigators? And so if the agents knew, what is the law on whether that information is attributable to the prosecutor? I think that, well, first of all, I would disagree that there's any kind of Brady issue here that the government knew. I'm not raising Brady, because there's a different standard if the government knew. I'm talking about do you get an even, if there's a showing that the government knew or should have known, there's an even lesser standard for granting a new trial. That's correct, Your Honor. I mean, the standard all depends upon the level of government knowledge, whether it was intentional, whether it was negligent, or whether there was not any government misconduct at all. I think there's no evidence in this case that there was any government misconduct at all. At most, what the defense counsel mentioned is pulling over of Silva with Fiero after the drug deal occurred, with Silva holding a meth pipe, which he cut his hand on, in no way suggests that they were doing drugs together. In no way suggests someone was selling drugs to one another. In no way suggests? I don't believe so, Your Honor. If Silva is a known drug user, drug dealer who's being looked at by the B&E. If you're sitting in a car with somebody holding a meth pipe, it in no way suggests you're smoking meth with them? Well, you're right. Maybe that's a little stronger on no way suggests. That's what I asked. But I think that, again, that requires a number of inferences. There is no evidence that the B&E agents knew that Fiero was doing drugs other than what he did. Somehow I think if a policeman saw two guys in a car, one of them has a marijuana cigarette in his hand. And the cop says, oh, I see what you guys have. And the fellow said, well, that in no way suggests that we're smoking marijuana together. Well, Your Honor. The policeman would think, what are you, a smart aleck? Well, Your Honor, but in this case, it was in his pocket. He had cut his hand on it. He's not sitting there smoking it, you know, as in your example. Why would he have it at all? I don't let people smoke with meth pipes in my car. Perhaps, I mean, here's another inference. That the C.I. didn't even know he had it. He had it in his pocket. It smoked and got high before he got in the car. He was getting to ride somewhere and get out. You can reach a number of inferences, but none is more true than the other. Or there's no evidence that one is more true than the other. The government's burden is beyond a reasonable doubt. That's right. But the burden on review is whether there's a reasonable probability that this evidence could have affected the verdict. I think, again, if we look at other independent evidence, this is not a case where it was a weak case and all the government had to rely on the C.I., this confidential informant. This is a case with recordings, phone records going a week before the drug deal where the defendant is constantly calling the confidential informant with very few callbacks. So he's in the case no matter what. And wouldn't whether or not he was testifying truthfully be relevant to determining even how you interpret those tapes? Well, no. I believe the tapes speak for themselves. And they also were not just interpreted by Fiero as defense counsel. Well, I think what we're interpreting, it's not a weak case that a drug deal went down. What we're interpreting is would this evidence have affected the entrapment defense? Because the entrapment defense would be a defense to this, right? Right. We know what happened. And no one's really disputing that, but the issue of entrapment. How does this evidence affect the defendant's ability to put on an entrapment defense? Well, again, I think it speaks more to the inducement and much less to the predisposition. I don't think SILVA provides anything. But the district court said it didn't say anything to the predisposition. I think it's... So I hate to cross-examine you, but much less than means that it's relevant to that. Well, I think, again, whether SILVA says nothing about Sanchez's predisposition other than Sanchez had recently gone out of jail and decided to start up drugs again with him. And he bought drugs and had him buying drugs. SILVA doesn't really say anything about the defendant's predisposition other than he was a drug user. He was using drugs. It just doesn't speak to anything else about predisposition. The only evidence we have is what the government presented about his prior convictions, what's on the tape, the phone records leading up to the drug deal where he's constantly calling himself... I guess it's the in no way that's hanging me up again. If I go to B&H Camera and I buy a camera, then that shows, I think, that I'm a buyer, not a seller of cameras. Well... And all I have to do is transfer it to the illegal commodity at issue here, and it seems like it gives rise to the same inference. Buyer, not seller. Well, I think SILVA didn't provide information regarding the defendant being a seller. We just don't know. There's an absence on that. It's just zero. There's no evidence. Sure, you could be both a buyer and a seller. You could buy cameras at B&H Photo and you could sell them on eBay. But the fact that you bought at B&H tends to show you're a buyer. Well, I think you can be a user and a seller. All we know from SILVA is that he was a user. We know nothing about whether he was a buyer. The fact that he's a user adds evidence that he's a buyer and not a seller, and it's part of his story that he doesn't get into selling because he's likely to use all the inventory on himself. I think the inference can go either way. I think plenty of users are sellers. I mean, plenty of drug dealers are sellers. I'm sorry. Plenty of drug dealers are users and buy. Part of selling is buying. I mean, I think that what SILVA provides is really an absence of anything on predisposition. All he says is that they did drugs together one time. Okay. I guess, unless we have further questions, I ought to cut you off because you're way beyond your hour. We're way beyond time. I know. Thank you. I submit. Thank you, counsel. I realize I was unless the Court has any questions, I'm prepared to submit. Thank you, counsel. Great. Thank you. United States v. Sanchez is submitted. Ramos v. Yates is submitted, and we're adjourned for the morning.
judges: Kleinfeld, Wardlaw, Callahan